**In re TYLER'S ESTATE.**

**FIDELITY–PHILADELPHIA TRUST CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 7239.

Circuit Court of Appeals, Third Circuit.

Jan. 31, 1940.

Wm. W. Montgomery, Jr., of Philadelphia, Pa., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., for respondent.

Before BIGGS, CLARK, and JONES, Circuit Judges.

BIGGS, Circuit Judge.

The Board of Tax Appeals has entered its decision against the petitioners, finding a deficiency in the sum of $121,936 in estate tax. The petitioners have appealed to this court for a review of the Board's decision.

The pertinent facts are as follows. Sidney F. Tyler died upon June 3, 1935. Upon April 22, 1885, he transferred certain personal property in trust, the income of which was to be paid in equal shares to his two children and to the issue per stirpes of either child predeceasing the other. The settlor also provided by the indenture that the trust was to come to an end upon the death of the surviving child, and that the corpus of the trust should then be distributed among the children's issue then living in equal shares per stirpes. The indenture also provided for gifts over in the event of failure of issue.

The indenture contained the following clause: "Provided nevertheless and it is hereby further agreed and declared that the said Sidney F. Tyler may at any time or times before said period of distribution of said trust property shall arrive, by any deed or deeds or other instrument in writing either alter or absolutely revoke and annul all or any of the uses, trusts and estates hereinbefore limited and declared, and by the same or any other deed or instrument limit and declare such other uses, trusts and estates, of or concerning all or any part of the said trust property hereinbefore transferred and conveyed, and the investments representing the same as he shall think fit, anything hereinbefore to the contrary notwithstanding."

Upon February 25, 1888, Tyler executed another instrument which provided in part as follows, that in consideration of the premises and other consideration " * * Tyler hereby releases and annuls the right of revocation so in the said Indenture of the twenty-second day of April A. D. 1885 was reserved and provided. * * * Provided, nevertheless, that nothing herein contained shall be deemed to affect or limit any other of the terms and conditions of said Indenture, or divest, affect or disturb any estate, right or interest of * * Tyler in the said estate, other than the said right of revocation."

The language just quoted from the 1888 instrument follows a verbatim recital of the clause of the 1885 instrument which we have quoted above and which reserved to

the grantor the right either to alter or absolutely revoke and annul the uses, trusts and estates set up.

Section 302 of the Revenue Act of 1926, Ch. 27, 44 Stat. 71, as amended by Section 401 of the Revenue Act of 1934, 48 Stat. 752, 26 U.S.C.A. § 411, and Treasury Regulations 80 (1934 Edition), Article 20, govern the case at bar. Section 302 as amended by Section 401, provides in part that

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *."

Section 401 provides in part: "(d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

Article 20 of the pertinent Treasury Regulations provides: "Power to change enjoyment.—The value of the property transferred, other than by a bona fide sale for an adequate and full consideration in money or money's worth, constitutes a part of the gross estate, whether the transfer was made before or after the enactment of the Revenue Act of 1916, if at the time of the decedent's death the enjoyment thereof was subject to any change through a power, exercisable either by the decedent alone or in conjunction with any person, to alter, amend, or revoke."

The petitioners concede that if after the execution of the 1888 instrument there remained in Tyler any right to alter or amend the indenture of 1885 so as to enable him to direct a change in the proportionate division of income or of principal between the beneficiaries, the trust estate falls within the purview of the section of the Revenue Act and the regulation quoted.

We are concerned therefore with only one question, which may be stated as follows: After the execution of the instrument of 1888 did the decedent retain the power to reapportion shares of the principal or income among the named beneficiaries of the trust? If so, the corpus of

the estate is taxable under the Act; there is a deficiency and the decision of the Board must be affirmed. Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 77 L. Ed. 880; Sanford's Estate v. Commissioner, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. ——; Cook v. Commissioner, 3 Cir., 66 F.2d 995; Holderness v. Commissioner, 4 Cir., 86 F.2d 137. Otherwise, it must be reversed.

■ The question must be resolved by finding the intention of the settlor as expressed in the two indentures. McGinley v. Commissioner, 9 Cir., 80 F.2d 692; Langford Investment Company v. Commissioner, 5 Cir., 77 F.2d 468; Hubbell v. Burnet, 8 Cir., 46 F.2d 446, 448, certiorari denied, 283 U.S. 840, 51 S.Ct. 487, 75 L.Ed. 1450. The petitioners for their part contend that any change affecting the enjoyment of the estate would involve necessarily a revocation in whole or in part of the trust and therefore when Tyler relinquished his right of revocation he gave up also his right to alter its uses. The petitioners rely as authority upon the "Restatement of the Law of Trusts", Volume 2, of the American Law Institute, where at paragraph (h) of Section 31 of Chapter 10 of the Restatement, p. 1002, is found the declaration that if a power to modify a trust is subject to no restrictions, it includes a power to revoke it as well. We think that the petitioners can draw small aid from this language for it is obvious that while a power to modify a trust may include a power to revoke it, the power to revoke a trust need not include necessarily the power to alter it.

The petitioners also rely upon an unreported opinion (No. 305 of 1938) of Presiding Judge Van Dusen, filed in the Orphans' Court of Philadelphia County, which is entitled "Estate of Margaret Gibson Grossman". In the cited case, the settlor, Mrs. Grossman, by an indenture conveyed property to a trustee to pay the net income therefrom unto herself for life, and, if she died without issue, to transfer three-fourths of the principal of the trust to Gibson and one-fourth of it to her husband. By the indenture she reserved to herself the right to cancel, alter, change or vary at any time or in any manner the provisions of the indenture and to withdraw from the trustee for her own or any other use any part of the holdings without pledging herself to restore them. By an indenture dated January 24, 1928 the

settlor "in the exercise of power in" her "reserved", did "alter and amend" the indenture and provide that upon her death three-fourths of the corpus of the trust should be paid to her husband and one-fourth should be paid to Wells College. This constituted a revocation of Gibson's interest. Subsequently she withdrew the sums of $4,000 and $3,000 from the trust estate and stated in the two withdrawing instruments that she did so in pursuance of her reserved power to alter or amend the indenture. Upon February 20, 1931, she executed an instrument in which she stated that she was desirous of "amending" the terms of the deed of trust and provided that the " * * * Indenture shall hereafter be irrevocable" except that she might withdraw principal from the trust not to exceed the sum of $10,000. Upon March 2, 1932, the settlor executed another instrument by which she purported to "absolutely revoke the disposition after the death of grantor of the corpus or principal of the estate held under said Indenture, * * *" and in lieu thereof directed that upon her death certain specific sums be paid to named beneficiaries, not including her husband. On March 14, 1938, the settlor executed a final instrument in which she purported to " * * * revoke, cancel and make void the trusts of the indenture as to $5,000 of the principal funds held thereunder." She died shortly thereafter.

The settlor's husband contended that the language of the instrument of February 20, 1931, providing that indenture should thereafter be irrevocable, was unambiguous and meant nothing less than that all of the provisions of the indenture as modified by the instrument of January 24, 1928 (whereby he was to receive three-fourths of the corpus of the trust) were made irrevocable, and that as to the corpus of the estate, the settlor reserved to herself no more than the right to withdraw a sum not exceeding $10,000 from the principal. Other claimants contended that though the words were unambiguous, they meant only that the transfer and conveyance of the property to the trustee was irrevocable, except to the extent of $10,000, and that the settlor reserved to herself in the original indenture two separate powers, viz., the power "to amend or modify" and the power "to revoke or withdraw". Therefore, contended these claimants, when the settlor made use of the word "irrevocable" in the amending indenture, she was applying this term solely to the power " * * * to revoke or withdraw".

Judge Van Dusen held that when the settlor executed the instrument of February 20th, the terms of the trust were made "irrevocable" except as to the settlor's right to withdraw sums not to exceed $10,000. He thereupon awarded three-fourths of the corpus of the trust to the settlor's husband and one-fourth to Wells College as provided by the terms of the indenture prior to the execution of the instrument of February 20th. Judge Van Dusen held that the term "irrevocable" was an apt term when applied to gifts of principal and that in making the indenture irrevocable the settlor had " * * * relinquished her right to designate other beneficiaries", thereby cutting off her husband. The court expressed the conclusion that the settlor had released her right to "cancel" since she had made the terms of the trust "irrevocable" and that in attempting to cut off her husband's interest she attempted to exercise the right of cancellation. The court held that the obliteration of the husband's interest was a cancellation of the gift to him and that such a cancellation was prohibited when an indenture was made irrevocable. The decision cannot be construed as a determination that an alteration in a trust indenture which, for example, increases the sum payable to one beneficiary while decreasing the sum payable to another, constitutes a cancellation of the trust. Such a course would constitute alteration, not revocation or cancellation. See Holderness v. Commissioner, supra, 86 F.2d page 138.

We hold that since the decedent in the case at bar made a clear distinction between powers of alteration and of revocation it was his intention to make each power distinct and severable. It follows that when he relinquished the right of revocation, he retained the right to alter or reapportion the respective shares of principal and income among the beneficiaries. The corpus of the trust must be included as part of the decedent's gross estate for estate tax purposes, the settlor at the time of his death having possessed the power to alter or amend the trust. Sanford's Estate v. Commissioner, supra; Hesslein v. Hoey, 2 Cir., 91 F.2d 954, certiorari denied 302 U.S. 756, 58 S.Ct. 284, 82 L.Ed. 585.

The decision of the Board is affirmed.