MELLON et al. v. DRISCOLL, Collector of Internal Revenue.

No. 7438.

Circuit Court of Appeals, Third Circuit.

Feb. 3, 1941.

Wm. S. Moorhead and Wm. F. Knox, both of Pittsburgh, Pa., for appellants.

Samuel O. Clark, Jr., Asst. Atty. Gen., Helen R. Carloss, Sewall Key, and Edward First, Sp. Assts. to the Atty. Gen., and George Mashank, U. S. Atty., and Elliott W. Finkel, Asst. U. S. Atty., both of Pittsburgh, Pa., for appellee.

478

Before BIGGS, MARIS and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This case is another [1] illustration of the dual and therefore confusing procedure still permissible in contests between the taxpayer and his government. It happens (used advisedly) to come to us from the United States District Court. In 1917 the father of the present appellants executed two deeds of trust for the benefit of his two minor children, a son Thomas, and a daughter Lucille. Each of these instruments gave them the income from 150 $1,000 par value bonds for life with power of appointment by will. The trusts contained two clauses relevant to the present controversy. They read:

"Neither the principal of the said trust estate nor the income thereof shall in any manner be liable to the control or answerable for the debts, contracts, engagements or torts of the said cestui que trust, or liable to any charge, assignment, conveyance or anticipation by him.

\* \* \* \* \* \*

"The party of the first part hereby reserves the right after six months written notice of his intention so to do, served on the party of the second part, to revoke this trust, whereupon the principal of the trust fund shall be distributed to Thomas Mellon, S. Lucille Mellon Grange, and the trust shall end." Deed of Trust Exhibits Nos. 3 and 4 Appendix to Appellants' brief, pp. 69, 70, 72, 73.

In these provisions we perceive the usual form of a spendthrift [2] trust. This type of trust has received the approval of the Pennsylvania courts. [3] From the logic of its purpose termination must depend on the settlor. It cannot be accomplished by compulsion of the beneficiaries, [4] even under a statute favoring charitable organizations. [5] So here the father expressly provided for such termination upon notice. He died in 1934 without exercising this right to indicate that in his opinion his children could look after themselves. The Commissioner of Internal Revenue included the value ($184,629.40) of the property held in the two trusts in the estate taxable under the appropriate statute. [6]

We think this inclusion proper and are surprised at its being questioned. The theory of the tax is both old and familiar. [7] The settlor's death, [8] or in the

---

[1] Fox v. Rothensies, 3 Cir., 115 F.2d 42.

[2] The Spendthrift's Progress Since 1936, 53 Harvard Law Review 296 (note).

[3] Fisher v. Taylor, 2 Rawle 33; In re Spring's Estate, 216 Pa. 529, 66 A. 110; other cases cited in 39 Vale Pa. Digest, Trusts, ☞12.

[4] 3 Scott on Trusts § 337.2.

[5] In re Harrison's Estate, 322 Pa. 532, 185 A. 766.

[6] "Section 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, \* \* \*.

"(d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

"(2) For the purposes of this subdivision the power to alter, amend, or revoke

shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the alteration, amendment, or revocation takes effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised. In such cases proper adjustment shall be made representing the interests which would have been excluded from the power if the decedent had lived, and for such purpose if the notice has not been given or the power has not been exercised on or before the date of his death, such notice shall be considered to have been given, or the power exercised, on the date of his death." Revenue Act of 1926, as amended by the Act approved May 10, 1934, 26 U.S.C.A. Int.Rev.Acts, page 227 (1934).

[7] Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Rottschaefer, Taxation of Transfers Intended to Take Effect in Possession or Enjoyment at Grantor's Death, 14 Minnesota Law Review 453, 473–482, 613, 631–634.

[8] Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880.

case of the gift tax, his release,[9] ends his power and so passes a valuable assurance of title. The statute has been given a liberal interpretation and taxability thereunder found in many different sets of circumstances. A shifting of economic benefits has been stressed.[10] The grantor need not be able to exercise the power for his own benefit and in fact may expressly exclude any alteration in favor of himself.[11] A change of beneficiaries[12] or a change in the amounts they are to take[13] is sufficient. The statute applies even though parties with adverse interests share the power with the settlor.[14] In fact the only qualifications permitted go to a power affecting trivial and unimportant matters[15] and to the retroactive application of the statute if the power is exercisable by the grantor in conjunction with another person.[16]

■ Appellants' counsel contends that the settlor's reservation was a power of termination, which power, it is averred, is not included in the statutory words "to alter, amend, or revoke". This argument appears to be derived from a part of a Treasury Regulation of 1940. Appellants' counsel quotes it in his brief: "A power to terminate capable of being so exercised as to revest in the decedent the ownership of the transferred property or an interest therein, or as otherwise to enure to his benefit or the benefit of his estate, is,

to that extent, the equivalent of a power to 'revoke', * . * * ". Estate Tax Regulations 80, Article 20, Appellants' brief, p. 20.

We say a part advisedly because for some and, as we think futile reason, he has omitted the first two sentences and the last phrase. The entire section reads: "A third change * * * consisted of the addition of the words 'or terminate' following the words 'to alter, amend, revoke'. Such addition is considered but declaratory of the meaning of the subdivision prior to the amendment. A power to terminate capable of being so exercised as to reinvest in the decedent the ownership of the transferred property or an interest therein, or as otherwise to inure to his benefit or the benefit of his estate, is, to that extent, the equivalent of a power to 'revoke', and when otherwise so exercisable as to effect a change in enjoyment, is the equivalent of a power to 'alter'". Estate Tax Regulations 80, Article 20, 3 C.C.H.Fed. Tax.Serv.(1940) para. 3440.

The Treasury was moved to the promulgation of this Regulation by decisions of the United States Supreme Court[17] and by the action of Congress thereon.[18] In these cases a ground suggested for the defeat of the tax was a failure of the statutory trio "revoke, alter and amend" to include "terminate" in their meaning. The trusts there litigated were expressed to be at end

---

[9] Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748.

[10] Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Brady v. Ham, 1 Cir., 45 F.2d 454; but cf. Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996.

[11] Porter v. Commissioner, above cited.

[12] Laird v. Commissioner, 29 B.T.A. 196, affirmed on other grounds, 3 Cir., 85 F.2d 598, modified on other grounds 85 F.2d at page 600; Bank of New York & Trust Co. v. Commissioner, 20 B.T.A. 677.

[13] Cook v. Commissioner, 3 Cir., 66 F.2d 995, certiorari denied 291 U.S. 660, 54 S.Ct. 377, 78 L.Ed. 1052; Commissioner v. Chase National Bank, 2 Cir., 82 F.2d 157, certiorari denied 299 U.S. 552, 57 S.Ct. 15, 81 L.Ed. 407; Holderness v. Commissioner, 4 Cir., 86 F.2d 137; Frederick Foster, Ex'r, v. Commissioner, 31 B.T.A.

769; Hoblitzelle v. United States, Ct.Cl., 3 F.Supp. 331, 333, 334; cf. In re Tyler's Estate, 3 Cir., 109 F.2d 421.

[14] Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62; Witherbee v. Commissioner, 2 Cir., 70 F.2d 696, certiorari denied 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678.

[15] Dort v. Helvering, 63 App.D.C. 98, 69 F.2d 836, 841, certiorari denied 293 U.S. 569, 55 S.Ct. 80, 79 L.Ed. 668; Lowndes, The Constitutionality of the Federal Estate Tax, 20 Virginia Law Review 141, 161.

[16] Saltonstall v. Saltonstall, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565; Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880; Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76; Mackay v. Commissioner, 2 Cir., 94 F.2d 558.

[17] Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76; White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80.

[18] Revenue Act of 1936, § 805, 49 Stat. 1744, 26 U.S.C.A. Int.Rev.Acts, page 957.

or terminated upon action taken according to an instrument other than and subsequent to the creating document. The Supreme Court refused to pass upon the relation between the four words and found as their ratio decidendi the omission in the original declaration of trust. As the contention had been made, however, Congress to make assurance doubly sure added the "terminate" of the litigated instruments to the previously included "revoke, alter and amend". In doing so, the relevant Committee made the precautionary character of their purpose quite plain. Their Report reads: "Another change made in * * * (Section 302(d)) has been to expressly include a power to terminate along with the powers to alter, amend, or revoke. In the case of White v. Poor, supra, the Supreme Court did not pass on the question of whether the power to terminate was included in the language relating to a power 'to alter, amend, or revoke'. Since in substance a power to terminate is the equivalent of a power to revoke, this question should be set at rest. Express provision to that effect has been made and it is believed that it is declaratory of existing law." H.Rep. No. 2818, 74th Cong., 2d Sess. p. 10, 3 C.C.H.Fed.Tax.Serv. (1940) para. 2412.[19]

The Treasury Regulation is in explanation of this amendment and the reason thought to be underlying it. No inference of a change and therefore of a different rule can be drawn.

We suggest that the Congress exceeded the Treasury in its knowledge of the law of trusts. The text books on and Restatement [20] of that branch all include chapters entitled Termination and Modification of the Trust. In those chapters are discussed the several methods of terminating a trust, and included among them is, of course, the revocation of the trust by the settlor. Professor Scott outlines the general principles: "Ordinarily the terms of the trust fix the period of its duration, and it will not be terminated until the expiration of that period. In certain situations, however, the trust may be terminated at an earlier date. Thus, for example, where the creation of the trust was induced by fraud, duress or undue influence or the trust was created as a result of a mistake, the settlor or his successors in interest may have the trust rescinded. This is true whether the trust was created inter vivos or by will. Where it is created inter vivos the settlor may terminate it by revoking it if he reserved a power of revocation. If, however, he did not expressly or impliedly reserve a power of revocation and if his failure to reserve a power of revocation was not due to a mistake, he cannot revoke the trust, unless all of the beneficiaries are ascertained and are under no incapacity and consent to the revocation. Similarly the settlor cannot modify the terms of the trust if he did not reserve power to do so at the time of the creation of the trust." 3 Scott on Trusts, § 329A.

It is clear that revocation is but a method of bringing a trust to an untimely end and has no relation to the consequent and subsequent fate of its corpus. The "calling back" is of time rather than of space. It seems unnecessary to be troubled by the Treasury's doubts as to the kind of termination or to resort to their ascription of the word itself to "alter" rather than to "revoke".

The judgment of the District Court is affirmed.

---

[19] For the use of legislative reports in interpreting statutes, see, Landis, A Note on "Statutory Interpretation", 43 Harvard Law Review 886; Jones, Statutory Doubts and Legislative Intention, 40 Columbia Law Review 957; Jones, Extrinsic Aids in the Federal Courts, 25 Iowa Law Review 737; De Sloovere, Extrinsic Aids in the Interpretation of Statutes, 88 University of Pennsylvania Law Review 527; Legislative Materials to Aid Statutory Interpretation, 50 Harvard Law Review 822 (note).

[20] 2 Restatement, Trusts, Chapter 10.