COMMISSIONER OF INTERNAL REVE-
NUE v. HOFHEIMER'S ESTATE et al.

HOFHEIMER'S ESTATE et al. v. COM-
MISSIONER OF INTERNAL
REVENUE.

No. 113.

Circuit Court of Appeals, Second Circuit.

May 25, 1945.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Robert Koerner, Sp. Assts. to Atty. Gen., for the Commissioner.

Joseph M. Proskauer, Norman S. Goetz, Wilbur H. Friedman, and Charles Looker, all of New York City, for Corinne Hofheimer et al.

Before EVANS and CHASE, Circuit Judges, and HINCKS, District Judge.

CHASE, Circuit Judge.

These petitions by the Commissioner and by the executors of the will of Lester Hofheimer both present related issues as to the includibility in the gross estate of the decedent under § 302(d) of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev. Acts page 229 et seq. of the value, the corpus being limited to his own contribution thereto, of the life estates and that of the remainder interests in two inter vivos trusts, one of which was created by the decedent and his brother and one by the decedent alone.

He was a resident of the City of New York when he died on November 30, 1936, at the age of fifty-six. His executors elected to have the estate valued for tax purposes as of one year following his death as they might do under § 302(j) of the above statute as amplified by § 202(a) of the Revenue Act of 1935, 26 U.S.C.A. Int.Rev.Acts, page 805. They omitted from the estate tax return which they filed all income received during the year after decedent's death, but the Commissioner included it and determined a deficiency accordingly. While proceedings for the review of that determination were pending in the Tax Court the case of Maass v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940, 132 A.L.R. 1035, was decided and left the Commissioner without support in law for his determination. He then, however, amended his answer in those proceedings and raised for the first time the issues now before us. The Tax Court held that the value of each life estate was taxable but that the value of the remainder interests was not and these cross petitions to review that decision followed. 2 T.C. 773.

### The First Trust

On October 5, 1922, the decedent and his brother Arthur each contributed one half of the corpus of a trust they then established, with themselves and the Empire Trust Company as trustees, the net income of which was to be paid to their cousin Clara Hofheimer for life. She was born in 1887. At her death the principal was to be divided into two equal shares, one of which was to be paid to the children of each settlor, if living, otherwise to their issue, per stirpes. The settlors reserved the right to remove the third trustee and to appoint another and also reserved "to themselves during the lifetime of both or either of them, the right by instrument in writing executed and duly acknowledged by them, if both be living, or if only one be living, then by the survivor, of terminating this trust or from time to time amending its terms in respect to the payment of income to the beneficiary and of imposing any terms and conditions whatsoever in respect to the amount of income thereafter to be paid or the circumstances under which any income shall be payable; and upon the termination of the trust as aforesaid, the principal of said fund shall be distributed as hereinbefore provided." Arthur died in 1927 and thereafter the decedent could have exercised the reserved power of amendment or termination alone but did not do so.

### The Second Trust

The decedent established a trust on October 31, 1923, with himself and his wife, Corinne, as trustees to hold the corpus, all of which he contributed, and to pay the income thereof to his father-in-law and to his mother-in-law in equal shares while both lived and, upon the decease of one of them, to pay the entire income to the survivor for life. Upon the death of the survivor the corpus was to be paid to decedent's daughter Marion, if living, and if she were dead, to her surviving issue in equal shares. The power to alter, modify

or revoke in whole or in part was reserved to the settlor, but it was exercisable during the lifetime of himself and his wife only by their joint action.

On March 17, 1928, the decedent and his wife, acting in accordance with the reserved power, executed a new indenture which changed the date of the termination of the trust and of the distribution of the remainder from the date of the death of the survivor of the two life beneficiaries by including also the date of the death of the settlor so that the trust would terminate upon the death of the survivor of the life beneficiaries or upon the death of the settlor, "whichever shall first occur." The power of amendment and revocation was also altered to provide that the trust instrument could be modified or altered in any manner or revoked in whole or in part by the joint action of the decedent and his wife while both were living or by the survivor of them. In the event of revocation the entire principal and any accumulation of income was to be delivered immediately to the daughter Marion and was to become her absolute property, if she were then living, otherwise to her then surviving issue per stirpes, if any, and if none to the then surviving issue of the settlor in equal shares per stirpes.

On July 27, 1936, the decedent, without receiving any consideration in money or money's worth, acting jointly with his wife pursuant to the reserved power, executed a second amendment. His death was eliminated as an event of termination, and the death of the survivor of the life beneficiaries was left as one termination date when the principal was to become distributable to Marion, "if she be then living." The remainders distributable contingently upon her death before the decease of the surviving life beneficiary remained limited as they had been. It was provided, however, that upon the attainment by Marion of the age of twenty-one years, the trust should terminate and the principal should be paid to her to become her absolute property. No power to amend or revoke was reserved by the settlor but thereafter the trust instrument could "be modified or altered at any time and from time to time by instrument in writing executed by Corinne Hofheimer, provided however that such modification or alteration may be made only in favor of issue of the marriage of Corinne Hofheimer and Lester Hofheimer, and the foregoing right and power of modification and alteration given to said Corinne shall include the right and power to terminate the trust in all or in part and vest the principal, as to which the trust is so terminated, absolutely in any of said issue."

The power of alteration and termination remained as just stated unchanged at the date of the decedent's death. His father-in-law, mother-in-law and daughter Marion survived him and were respectively 83, 73 and 18 years of age when he died. He was in good health when the amendment of 1936 was made. The Tax Court found that the decedent's relinquishment in 1936 of the power to revoke the interests of the life beneficiaries was made in contemplation of death and that the value of them and that of the remainder was over $5000 at the date of his death.

On January 24, 1940, the petitioners paid a gift tax of $3111.74 plus interest of $525.71 which had been assessed upon the transfer by the decedent when he executed the amendment of 1936.

■ Section 302(d) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 26 U.S.C.A. Int. Rev.Acts, page 229, is controlling as to the issues in respect to the first trust. The changes made by the addition of subdivision (2) in § 401 of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev. Acts, page 759, are not applicable, and § 805 of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 957, was limited by subsection (b) to transfers made after its enactment and provided that "no interest of the decedent of which he has made a transfer shall be included in the gross estate under such section 302(d) (1) unless it was includible under such section before its amendment by this section."

■ The inclusion of the value of the life estate was clearly right. The petitioners are mistaken in their assertion that the power to amend the terms of the trust instrument in respect to the payment of income to the beneficiary and of imposing any terms and conditions whatsoever in respect to the amount of income thereafter to be paid or the circumstances under which any income should be payable was only a power exercisable in favor of the life beneficiary and did "not include the power to take any income away from her." It plainly gave the settlors the power to reduce the amount at least to a mere nominal sum, if not to zero, and make that pay-

able only as they saw fit. It is immaterial under the statute that during the life of Arthur the decedent could act only in concert with him; and, moreover, during the period between Arthur's death in 1927 and that of the decedent in 1936 the latter could have exercised the power alone. His death ended the possibility of the exercise of that power to deprive the life beneficiary of the value of her interest and made its then value includible in the decedent's gross estate. Commissioner of Internal Revenue v. Bridgeport City Trust Co., 2 Cir., 124 F. 2d 48, certiorari denied, 316 U.S. 672, 62 S.Ct. 1042, 86 L.Ed. 1747; Commissioner of Internal Revenue v. Chase National Bank, 2 Cir., 82 F.2d 157, certiorari denied 299 U.S. 552, 57 S.Ct. 15, 81 L.Ed. 407. See also Porter v. Commissioner of Internal Revenue, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880; Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62.

■ The Tax Court held, however, that the remainder interests were not includible because no power to alter the remaindermen was reserved. It is true that they could not directly be changed and that in respect to them the exercise of the power to terminate the trusts would but accelerate the date of distribution. Whether that would make a difference in the identity of the takers could not be known before the decedent died since it could not before then be known whether they would be the same, whenever he might terminate the trust, as they would be at his death. This power to accelerate was not only the power to provide that the same remaindermen would get at an earlier date what they were entitled to receive eventually in the same amounts; but was a power to make sure that his living children would have the enjoyment of remainders which otherwise they might not get at all. In this respect it was not a power to bring about merely a slight or trivial change. It enabled the decedent to provide for his children to the extent of their remainder interests immediately as of any time before his death when their circumstances or any other motive might prompt him to do so. Though different in its application, it is akin to the change which could have been made by the exercise of the reserved power to revoke in Mellon v. Driscoll, 3 Cir., 117 F.2d 477. Only had the decedent in that case revoked the trust would the life beneficiaries have received the corpus instead of having at most but the income for life coupled with

the power of appointment by will. The power to revoke was in effect the power to bring about immediate distribution of the corpus to persons who would otherwise have no interest in it but the power of appointment by will. Here the power to terminate was equivalent to the power to revoke as to the life estate and to bring about immediate distribution of the corpus to persons who otherwise might not take any of it at all. The enjoyment of the remainder interests which had been transferred in trust was therefore subject to change through the exercise of decedent's power of termination which was cut off by his death. If this power to change the enjoyment is not merely as to trivial matters it is within the statute. Dort v. Helvering, 63 App.D.C. 98, 69 F.2d 836. It did not have to be exercisable by the settlor for his own benefit. Porter v. Commissioner, supra. The power at any time to change the enjoyment of the remainder interests from an indefinite period in the future by remaindermen whose identity and number were not presently known to the immediate present by individuals who were known cannot be regarded as but trivial. The test is not whether the change has to be brought about by an acceleration of the falling in date of remainders or in some other particular way but whether the power reserved may be exercised to shift comparatively substantial economic benefits.

■ It should be noticed that the applicable statute did not in terms include the power to terminate. It provided only for inclusion in the gross estate if the enjoyment of the transferred interest was subject to any change through the exercise of a power to alter, amend or revoke. The word "terminate" was not added until the enactment of § 805(a) of the Revenue Act of 1936. In White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80, it was found unnecessary to decide whether the power to terminate was equivalent to a power to alter, amend or revoke. The legislative history of § 805(a), supra, shows that Congress added the word not to amend § 302 but to carry out its purpose to make the new section declaratory of existing law. That is the view taken by the treasury. T.R. 80, Art. 20. See, Welch v. Terhune, 1 Cir., 126 F.2d 695. If in the instant trust the word "revoke" had been used instead of the word "terminate," the power if exercised would

have had exactly the same effect. Termination would have revoked not only the life estate provisions but also the suspension of the falling in of the remainders and came, we think, within the statute. Cf. Mellon v. Driscoll, supra. It would be strange, to say the least, if the settlor could reserve the same power by choosing to use the word "terminate" instead of "revoke" and by so doing accomplish what the statute was designed to prevent. See Union Trust Co. of Pittsburgh v. Driscoll, 3 Cir., 138 F.2d 152.

 Section 302(d) cannot be applied retroactively where the transfer is complete in that the settlor reserved no power in himself alone to alter, amend or revoke when the trust was created. Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76; Commissioner of Internal Revenue v. Flanders, 2 Cir., 111 F.2d 117. Yet the section may be applied to an earlier transfer when the power is exercisable by the decedent alone. Porter v. Commissioner, supra; Chase Nat. Bank of City of New York v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397. Here there was a long period after the death of Arthur when the decedent could have alone exercised the power. That is the power which his death cut off and as to that the statute is not retroactive. Adriance v. Higgins, 2 Cir., 113 F.2d 1013.

As the decedent relinquished whatever power he then had to alter, amend or revoke the second trust in 1936 less than five months before his death, no question arises as to the effect of the extinction of any power by death.

The Commissioner, however, contends that the power relinquished was one which would have brought the transferred interest into the decedent's gross estate had he retained it until his death. He further contends that the relinquishment of it had the same effect which would have flowed from the retention of it until death to the extent provided by the following part of § 302(d) as amended in 1934, 26 U.S.C.A. Int.Rev.Acts, page 759:

"(3) The relinquishment of any such power, not admitted or shown to have been in contemplation of the decedent's death, made within two years prior to his death without such a consideration and affecting the interest or interests (whether arising from one or more transfers or the creation of one or more trusts) of any one beneficiary of a value or aggregate value, at the time of such death, in excess of $5,000, then, to the extent of such excess, such relinquishment or relinquishments shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title; * * *." The reference to consideration is, of course, to "an adequate and full consideration in money or money's worth," which was not shown or claimed, and it is conceded that the interest of each beneficiary was worth more than $5000 at the time decedent died.

The power which the decedent relinquished in 1936 was what he had under the amendment of 1928. It was the power to modify or alter the trust instrument in any manner or to revoke it in whole or in part with the proviso that upon the revocation the corpus and accumulated income, if any, should become immediately payable to the remainderman if living, or, if not, to her surviving issue in equal shares per stirpes and otherwise to the surviving issue of the settlor in equal shares per stirpes. Had the decedent retained this power until his death all of the then value of the interest he transferred in trust would have been includible in his gross estate for the reasons already stated in respect to the first trust. Consequently, the principal question is whether the Tax Court erred in finding that the power was relinquished in contemplation of death. The executors contend that the finding was erroneous (1) because they were held to the burden of proving that it was not, even though the issue was first raised by the Commissioner in his amended answer, and (2) because the finding was not supported by the evidence. For the reasons about to be stated, I do not think the finding should be held erroneous and dissent from that part of the judgment of this court which is based upon the conclusion of the majority that it was not supported by the evidence.

 The Commissioner having made no determination of a deficiency based upon the inclusion in the gross estate of any part of this trust but having raised this issue first by his amended answer in the Tax Court, it was new matter on which he had the burden of proof under Rule 32 of that court. However, he did show that the power was relinquished within two

years of the decedent's death and not "in case of a bona fide sale for an adequate and full consideration in money's worth." Under § 302(d) (3) of the 1926 Act as amended in 1934, that carried the burden prima facie and made decision rest upon an evaluation of the evidence as a whole to determine whether it preponderated in favor of the Commissioner's contention, the weight to be given the evidence and the credibility of the witnesses being matters within the province of the Tax Court. The situation is the same as though a suit to collect the tax had been brought against the executors and the Commissioner had proved that the power had been relinquished without consideration in money's worth within two years before the decedent died. By putting himself in an equivalent position in the Tax Court the Commissioner met for the time being the requirement of its Rule 32 and the burden of proceeding passed to the executors. They then could prevail only by proving by a fair preponderance of the evidence that the relinquishment was not in fact made in contemplation of death, otherwise the statute required that it "be deemed" to have been. Farmers'. Loan & Trust Co. v. Bowers, 2 Cir., 98 F.2d 794, 799. Compare, First Trust & Deposit Co. v. Shaughnessy, 2 Cir., 134 F.2d 940.

On this issue the executors proved that the decedent was in at least average good health up to the time he died at fifty-six years of age. His widow testified that he told her that he made the change so that she could make any future decisions she might care to make as to her parents' welfare and that she didn't believe there was any discussion about taxes in that connection. She also testified that she was not aware of any concern of her husband with possible changes in income tax laws or regulations that might make the income of the trust taxable to him and did not have any discussions with him on that subject. She admitted, however, that she had filed an affidavit in the Bureau of Internal Revenue in which she had sworn that, "The decedent renounced the power in July, 1936, principally because of his concern that possible changes in income tax laws or regulations or court decisions might make the income of the trust taxable to him." She explained that she had put this into her affidavit as a result of discussions with her attorneys and knew nothing about it except from them, her husband's concern over her having the power to make future decisions as to the welfare of her parents being uppermost in her mind when she made the affidavit.

There was, indeed, little evidence to show whether the decedent was prompted to act as he did by considerations pertaining to a continuance of his life or those pertaining to the possible effect of his death. The Tax Court noted that in the previous November the Supreme Court had held in Helvering v. City Bank Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62, that a power to revoke a transfer in trust, which was exercisable by the settlor only with the consent of another who was a beneficiary, was within § 302(d) provided the transfer was made after the enactment of the statute. It reasonably inferred that it "seems more than probable that decedent was thereafter advised by counsel that he should surrender his power of revocation entirely and that the 1936 amendment was the result of taking this advice." The Tax Court also doubted, as its opinion shows, that the decedent was primarily concerned in making the change in 1936 with the welfare of his parents-in-law whose life estates had previously been held for decedent's life or until the surviving parent-in-law died. The change made them terminate in less than 39 months provided the daughter Marion survived that period. Its conclusion that under all the circumstances the relinquishment of the power, made without consideration in money's worth within two years of his death, should be deemed to have been made in contemplation of death because the contrary had not been shown cannot, therefore, be held erroneous as a matter of law. Colorado Nat. Bank v. Commissioner of Internal Revenue, 305 U.S. 23, 59 S.Ct. 48, 83 L.Ed. 20; Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. Had decedent merely desired to let his wife make the decisions as trustee respecting the welfare of her parents he needed only to defer to her wishes in that respect. The relinquishment of the power did nothing to accomplish that avowed purpose except to make it impossible for the decedent in the future to act as trustee contrary to his wife's desires, a possibility, of course, but with nothing in this record to show that such a motive was behind the renunciation. Yet while acquiescence in his wife's control of the trust was all that was needed to bring about the result the executors now contend he then intended, such acquiescence would have had no effect upon taxes.

To aid him or his estate tax-wise a renunciation was needed. Otherwise the corpus of the trust would be includible in his estate upon his death. In this situation he did renounce the power and died within two years thereafter. Though that is not very potent evidence that the decedent was moved to renounce by the thought that otherwise his death would be likely to subject his estate to increased taxation, it was at least some evidence on that score to be considered by the Tax Court. We can only sift the evidence in the record to determine whether some can be found to support the administrative action taken. We cannot weigh that evidence. Webre Steib Co. v. Commissioner of Internal Revenue, 65 S.Ct. 578.

The value of the life estates at the date of decedent's death was rightly included in his gross estate for the reasons heretofore given in respect to the first trust. And the value of the remainder interest was also includible on the same grounds on which we have held the value of the remainders in the first trust includible. There is, however, an additional ground on which the remainder interest under the second trust is includible. Under the 1928 amendment the decedent and his wife had the reserved power to alter or amend in any manner. It was only upon revocation that the corpus and accumulated income were made payable immediately to the remainderman, if living, and otherwise to contingent remaindermen. The power to alter or amend in any manner short of revocation, was unlimited. That was a part of what was relinquished in 1936 after the power had then been exercised to make material changes in respect to both the life estates and to the remainder. The retention of this broad power to alter or amend would, if it had been retained until the decedent's death, have brought the value of the whole of the second trust into his gross estate by virtue of § 302(d). Guggenheim v. Helvering, 2 Cir., 117 F.2d 469; In re Tyler's Estate, 3 Cir., 109 F.2d 421. Its relinquishment by the decedent in contemplation of death and without the sort of consideration mentioned in the statute likewise brought it within § 302 (d) and made the entire corpus, less what was exempt, includible in decedent's gross estate.

But only the value of the interest of each beneficiary in excess of $5000 is includible. The Tax Court held, however, that the decedent's parents-in-law were to be treated as one beneficiary for the purpose of giving effect to the exemption because their interest was joint and was continued in the survivor. Yet each of them was a beneficiary to the extent of one half the income. Each had a separate interest for life in an undivided one-half of that income. It was only in the event of the death of one of them that the survivor became entitled to the interest of the other. Until then there were, and would be, two life beneficiaries and that was so in 1936 when the decedent relinquished the power he had and died a few months later in the same year. Only the value of the life estate of each in excess of $5000 was therefore includible in decedent's gross estate. And as there was but one remainderman in 1936 the value of the remainder in excess of $5000 was includible.

 My brothers, however, do not agree that there was evidence sufficient to support the finding of the Tax Court that the decedent made the transfer in contemplation of death. There is, accordingly, no legal basis for the redetermination of any deficiency in respect to the second trust.

Reversed in part and remanded for further proceedings in accordance with the views of the majority as stated in this opinion.