Hillsborough, }
June 26, 1915. }

### WILLIAM H. WESTON, *Adm'r & Ex'r*, *v.* SECOND ORTHODOX CONGREGATIONAL SOCIETY OF NASHUA & *a.*

A power of disposal annexed to a life estate does not necessarily enlarge it to a fee and destroy a gift in remainder, contrary to the intention of the testator.

Whether a general residuary clause is an exercise of a power of appointment by will is determined by the testator's intention.

Where a will gives the residue of an estate to the husband of the testatrix for life, with remainder to a religious society, and provides that he may dispose of the property "for his support or benefit, or for the interest of the estate, as he may deem necessary," the power is limited to the specified purposes and can be exercised only during the existence of the life estate.

A provision in a will which empowers a life tenant to dispose of property "for his support or benefit" authorizes a disposition of the estate when necessary for his support, or whenever his prosperity or personal happiness would be thereby promoted, without regard to reasonable necessity therefor.

BILL IN EQUITY. The plaintiff, administrator with will annexed of the estate of Sarah A. Brown and executor of the will of

Webster C. Brown, asks for a construction of the will of Sarah and for advice as to the administration of the two estates. All parties interested are represented and ask for a decision of the questions in controversy without regard to the form of the proceeding. Transferred from the September term, 1914, of the superior court by *Branch*, J., on an agreed statement of facts.

Sarah A. Brown, wife of Webster C., died January 10, 1902. Her will was dated April 10, 1895, and was written by her husband. By the first clause she appointed him sole executor and requested that no inventory of her real or personal estate be made, and that no sureties be required of her husband as executor. The second clause directs him to provide for perpetual care of a cemetery lot by investing a sum not exceeding $500 for that purpose. The third clause of the will is as follows: "All the rest and residue of my real and personal property of every description that I possess I give, devise, and bequeath to my husband, Webster C. Brown, to have and to hold during his natural life, or to dispose of for his support or benefit, or for the interest of the estate, as he may deem necessary. As soon as may be after his decease, I direct, and it is my will, that all the remainder of my real and personal estate be given to the Second Orthodox Congregational Society in the city of Nashua, N. H., for the purpose of assisting to maintain public religious worship in the Pilgrim Church, so called."

The will was proved January 20, 1902, and the husband qualified as executor. He filed an inventory showing real estate appraised at $5,000, fifteen shares of stock in local corporations appraised at $3,000 and worth approximately $4,300, one United States bond for $500, and deposits in four Nashua banks with a face value of $964.62, which were inventoried as value unknown, the banks being then in process of liquidation. Shortly after his appointment as executor, Brown surrendered the certificates of stock and took new certificates in his own name, in one case making the transfer through a third party. After his wife's death he occupied one parcel of the real estate left by her and rented the other. He died August 19, 1910, without having settled any account as executor, leaving a will executed December 10, 1904, the ninth and last clause of which is as follows: "All the rest and residue and remainder of my estate, real, personal, or mixed, of which I am seized or possessed, or to which I may be entitled at the time of my decease, I give, devise, and bequeath to my sister, Miss Sarah A. Brown, and to the grandchildren of Silas and Kate H. Brown."

Brown was one of the commissioners of Hillsborough county from 1886 to 1900. He and his wife lived in Nashua and were attendants upon the services of the Pilgrim Church, both before and after her will was made. They had no children or descendants, and she had no heirs so far as known. Under the residuary clause of Mrs. Brown's will, the Second Orthodox Congregational Society claims the real estate left by her and the stock for which her husband received certificates upon surrender of the shares standing in the name of his wife. Sarah A. Brown and the grandchildren of Silas and Kate H. Brown claim the same property under the residuary clause of Webster's will.

*William E. Chandler* and *George W. Clyde* (*Mr. Clyde* orally), for the plaintiff.

*George B. French* (by brief and orally), for the Second Orthodox Congregational Society.

PARSONS, C. J. Mrs. Brown's will is not the product of a professional scrivener whose use of terms might be influenced by judicial decision as to their meaning. Reading it as the product of ordinary acquaintance with the English language, little difficulty is found in arriving at her intention. She intended to give her husband something more than a life estate, or the alternative clause, "or to dispose of for his support or benefit," would not have been inserted. If she had intended an absolute fee, the words descriptive of a life estate and remainder would have been omitted. Her purpose plainly was that he should make such use of the estate as he might deem necessary, and that at his death all not disposed of by him should go to the society. This is not an impossible estate. *Shapleigh* v. *Shapleigh*, 69 N. H. 577. The power of disposal annexed to the life estate does not necessarily enlarge it to a fee and destroy the gift in remainder, contrary to the testatrix's intention. *Burleigh* v. *Clough*, 52 N. H. 267. The estate which Mrs. Brown intended her husband to have in her property being neither illegal nor impossible, her intention creates such estate irrespective of the failure to employ technical terms in its description. *Hayward* v. *Spaulding*, 75 N. H. 92.

The real estate in controversy does not pass to the residuary legatees under Mr. Brown's will. As he possessed, not a fee, but a life estate enlarged by a power of disposition, his will did not effect

a disposition of the estate by the residuary clause unless such was his intention, even if Mrs. Brown's will gave him such power. It is not probable Mr. Brown knew that it was held in *Burleigh* v. *Clough*, 52 N. H. 267, that a general residuary clause was not a good exercise of a power of appointment by will; or that it was held in *Kimball* v. *Society*, 65 N. H. 139, that such a clause was an exercise of such a power when the testator so intended; or that in *Emery* v. *Haven*, 67 N. H. 503, it was held that a general residuary clause will operate as an execution of a power to dispose of property by will unless there is something to show such was not the testator's intention, probably not meaning in the latter case to provide for the determination of the weight of competent evidence by rule, or to alter the decision in *Kimball* v. *Society*, *supra*.

Mrs. Brown intended that the remainder of her estate should go to the society and not to Mr. Brown's heirs. If he understood that he had a power of disposition by will, it is probable that to effect the defeat of Mrs. Brown's purpose, if intended, specific language would have been used. But the husband's power of disposition under his wife's will was limited to "his support or benefit, or for the interest of the estate." The natural import of this language requires the exercise of the power during the existence of the life estate. No ground is suggested upon which it can be assumed that Mrs. Brown understood the gift of the estate by his will to Mr. Brown's relatives would be for his support or benefit, or for the benefit of the estate.

Almost immediately after his appointment as executor, Mr. Brown surrendered the fifteen shares of stock standing in his wife's name and took out certificates in his own name. He held the certificates at his death; and the question whether he thereby acquired title to the stock depends upon the extent of the power of disposition conferred upon him by the will of his wife. The general purport of the wife's will was to place all her property under the control of her husband to do with as he deemed necessary, without control or restriction. She requested that no inventory should be made and that he should not be required to give sureties as executor. His power of disposition was not limited to his support, but was capable of exercise whenever he deemed it necessary for his benefit.

Technically, "benefit" is a much broader word than "support." *Stowell* v. *Hastings*, 59 Vt. 494; *Crain* v. *Wright*, 114 N. Y. 307; *Winthrop Co.* v. *Clinton*, 196 Pa. St. 472. But aside from these

authorities, doubtless unknown to Mr. and Mrs. Brown, the word "benefit" must have had some meaning. Mr. Brown was commissioner of the county for years and probably had some idea as to what was meant by expenditure for a person's "support." That word did not convey the idea desired, and the word "benefit" was used, doubtless in the ordinary sense of profit or advantage. "Whatever promotes prosperity and personal happiness." Webster Dict. The word is not used in connection with or in addition to "support," but in contrast therewith. The expression is not for his support *and* benefit, but "for his support *or* benefit." Authority was given for a disposition of the property when necessary to do so for his support, or if thereby his prosperity and personal happiness would be promoted. Neither was the occasion for the exercise of the power placed upon reasonable necessity therefor. It was to be exercised when the husband deemed it necessary. The testatrix vested the discretion with her husband, not with the court. He could not have made the transfer merely to keep the property from the residuary legatees. *Shapleigh* v. *Shapleigh*, 69 N. H. 577. But Mr. Brown's purpose in making the transfer and the grounds upon which the action proceeded are facts upon which the parties have not agreed. The fact that the old certificates were surrendered and new ones taken out in Mr. Brown's name does not, as matter of law, establish Mr. Brown's ownership of the property. Mr. Brown did not settle an account as executor in his lifetime; but whether what he did took the property out of Mrs. Brown's estate is to be determined upon the settlement of such an account, which the executor of Mr. Brown should make. If it cannot now be shown that Mr. Brown should be credited as executor with the stocks transferred to himself, his failure to settle an account in his lifetime may deprive his estate of property which he could have shown was his.

The plaintiff is advised that the rents of the real estate and all the personal property of Mrs. Brown for which, upon the settlement of the husband's account as executor of his wife's will, he is chargeable belongs to the society. The executor of Mr. Brown has no further concern with the real estate, because the society takes title thereto under Mrs. Brown's will.

*Case discharged.*

All concurred.