MERCHANTS' NAT. BANK & TRUST CO. *v.* PORT GIBSON OIL WORKS *et al.*

(Division A. April 18, 1932.)

[141 So. 283. No. 29845.]

Hirsch, Dent & Landau, of Vicksburg, for appellant.

**Wynn & Hafter,** of Greenville, for appellees.

**Cook, J.,** delivered the opinion of the court.

Mrs. Fannie Willis Johnson died in the city of Vicksburg, Miss., on the 2d day of September, 1931, leaving a last will and testament, which was duly admitted to probate in the chancery court of Warren county on September 4, 1931, and letters testamentary were issued to Blanche Winter, T. W. McCoy, and the Merchants' National Bank & Trust Company of Vicksburg, the executors named in the will. The said national bank was also designated in the will as trustee and depository of the trust funds created by several items of the will.

The will contained many specific bequests and separate items, among these being items 45 and 76, which are as follows:

"Item Forty-fifth: I hereby give and bequeath unto Harry Vick Phelps, of the Town of Nitta Yuma, in Sharkey county, in the state of Mississippi, upon the terms and conditions hereinafter set forth, the sum of ten thousand dollars ($10,000.00). This gift and bequest shall not be delivered in person to Harry Vick Phelps but shall be placed, in trust, in The Merchant's National Bank and Trust Company of Vicksburg, upon the terms and conditions hereinafter set forth, and held, in trust, for his use and benefit. One-tenth of the principal sum, and the income from the whole sum as it shall decrease from year to year, shall be delivered to him annually. If said principal sum and the income therefrom shall not have been paid to him at his death the residue thereof shall go to his heirs, share and share alike."

"Item Seventy-sixth: It is my will, and I hereby direct, that all gifts and bequests herein referred to, item by item hereof, wherein I have provided that such gift or legacy shall be placed in said The Merchants' National

Bank and Trust Company of Vicksburg, and held by said The Merchants' National Bank and Trust Company of Vicksburg, in trust for the use and benefit of such beneficiary, such gift or legacy shall be kept and securely invested in high class bonds or other good securities or otherwise dealt therewith as I have directed, during the lives of said beneficiaries, respectively, as set forth in each of said respective items, and the net income derived from such investment, unless otherwise provided, shall be paid over to said designated beneficiary, during his or her life and at his or her death such gift or legacy so held, in trust, by said Bank for such beneficiary shall go to, and be paid over to, such person or persons, as I have in each of said items designated.

"I further direct that if and when this will shall become effective and my said executors or their successors shall have qualified and accepted the said executorship, before a delivery by my said executors of said gifts or legacies, to said The Merchants' National Bank and Trust Company of Vicksburg or its successor, in trust, for said beneficiaries, respectively, an appropriate separate trust agreement as to each of said items, if my said executors shall so desire, shall be drawn and executed by and between said bank and the respective beneficiaries in each of said items hereinbefore designated, evidencing an acceptance of said gifts or legacies upon the terms and conditions set forth in each of said items, and said gifts or legacies thereafter shall be dealt with as I have herein provided. If any or all of such legatees or beneficiaries shall not desire to accept such gifts or legacies on such terms as I have herein set forth then such gifts or legacy shall fail and then and there become a part of my residuary estate to be disposed of as I have in this will designated."

In accordance with the condition of the aforesaid item 76, Harry Vick Phelps, named as legatee in item 45 of the will, in due course and proper manner, accepted the

legacy bequeathed to him by executing and delivering to the executors and trustee his acceptance. In the latter part of September, 1931, following the probation of the will and the acceptance of the legacy by the said Harry Vick Phelps he and his then living heirs-at-law, Henry Vick Phelps, Jr., and Mary Helen Phelps, for value, transferred and assigned to the Port Gibson Oil Works, a corporation, all right, title, and interest they acquired or might acquire in the future under item 45 of the will, and authorized and directed the Merchants' National Bank & Trust Company, as trustee, to pay and deliver to the said Port Gibson Oil Works, or its assigns, all money or other things of value which they or any one of them may have acquired, or which they may be entitled to receive in the future under the terms of the will.

Copies of this assignment were delivered to the executor and the trustee, and the Merchants' National Bank & Trust Company, as trustee, acknowledged receipt of the assignment, but declined to accept any responsibility or liability by the payment to the assignee of the sums of money accruing to Harry Vick Phelps or his heirs under the provisions of item 45 of the will. Thereafter the executors and the trustee filed their petition in the chancery court seeking a construction of items 45 and 76, particularly with reference to whether or not the legacy to Harry Vick Phelps is, under the terms and conditions of the will, assignable. To this petition, Harry Vick Phelps and his then heirs-at-law, Henry Vick Phelps, Jr., and Mary Helen Phelps, and the Port Gibson Oil Works were made parties defendant, and each of them filed an answer to the petition. Upon the petition and answers the court below held that the gift and bequest, as set forth in item 45 of the will, was and is subject to assignment by the said Harry Vick Phelps and his heirs during their lifetime; that the assignment by them to the said Port Gibson Oil Works was and is a valid assignment; that the said Port Gibson Oil Works

is now, by virtue of the assignment, the legal and equitable holder of said legacy, and that it shall be and is the duty of said executors and trustee to recognize said assignment and pay according to the terms and conditions of said will, and the terms and conditions of said assignment, to the Port Gibson Oil Works, or its assignee, such sums of money or things of value as the said Harry Vick Phelps and his heirs are now entitled, or may be entitled in the future, under the provisions of item 45 of the will. It was further held that the said Harry Vick Phelps and his heirs or their assigns are lawfully authorized to execute such trust agreement or agreements as may be required by the executors and trustee under the will, in accordance with the terms and conditions of item 76 thereof, and that the said assignee or assignees of Harry Vick Phelps and his heirs have the right to receive and receipt for said legacy, or any part thereof, as and when the same shall be paid to them, and that when the assignees of said legacy shall receive said fund, in accordance with items 45 and 76 of said will, and execute appropriate receipts therefor, the said executors and trustee in paying or disbursing said fund to said assignee or assignees shall be fully, finally, and forever released and discharged from the said trust in that regard. From this decree the Merchants' National Bank & Trust Company has prosecuted this appeal.

In the case of Dibrell v. Carlisle & Humphries, 51 Miss. 785, the court held that "the cestui que trust may bind by mortgage or deed in trust, or lawfully dispose of the trust estate without the assent of the trustee, unless forbidden in the instrument creating such estate," and this seems to be in accord with the authorities generally. This court, however, recognizes the validity of "spendthrift trusts," or trusts created by one with a view of providing a fund for the support and maintenance of another, and at the same time securing it against the improvidence or incapacity of the one for whose benefit it

is created. But there must be something on the face of the instrument indicating such a purpose on the part of the donor or testator, and, where the instrument creating the trust contains no express words of restraint and nothing on its face declaring that the purpose thereof is to provide a support for the beneficiary and to provide him with the comforts of life, and where it requires that part of the corpus of the trust estate and the income from the entire estate shall be paid directly to the beneficiary without any direction concerning its application, and without any discretion being vested in the trustee as to the time or amount of such payments, or the purpose to which they shall be applied, such payments may be anticipated or assigned by the beneficiary, and by proper proceedings may be subjected to the payment of his debts.

In the case of Leigh v. Harrison, 69 Miss. 923, 11 So. 604, 18 L. R. A. 49, the court had under consideration a bequest of the income from certain trust property to be used "for the support of Thomas (a son of the testatrix) during his life, making quarterly payments to him." On behalf of the appellant (a creditor) it was contended that the provision of the will directing the trustee to pay the income from the trust property to the beneficiary in quarterly payments evidenced a clear purpose of the testatrix that the beneficiary should have such income absolutely and unconditionally, while the appellee contended that by this provision of the will the trustee was vested with a discretion as to how and when the support should be given, and also with the right to personally supervise the application of this income to the support of the beneficiary, and therefore that it was not assignable or subject to his debts. After a consideration and discussion of many applicable authorities, the court held that it was the manifest purpose and intention of the testatrix that her son Thomas should "have assured to him an annual support, to be personally supervised and

applied to his use by the trustee," and further said, in reference to the clause of the will directing that the trustee should make quarterly payments to Thomas during his life, that: "We are now asked to seize upon a clause inconsistent with the general scheme, and, by construction, use it as a lever to overthrow the whole structure. This we cannot do. It is our duty to uphold the whole will, and, to do so, we should disregard subordinate and administrative provisions, rather than enlarge their effect, to the destruction of the whole scheme. We do not construe that clause which directs the trustee to make quarterly payments to Thomas as excluding the power and duty of the trustee to apply so much thereof as may be necessary to his comfortable support and maintenance according to his condition in life. As long as the fund may be in that manner applied in accordance with the will of the testatrix, it is permissible for the trustee so to disburse it, but when, and if, either by reason of a willful misapplication by Thomas, or a diversion of it by the act of his creditors, the scheme of the testatrix is or may be frustrated, it is within the power and duty of the trustee to intervene, and so control and apply a sufficiency thereof as to afford to Thomas the support contemplated by his mother."

In the Harrison Case, supra, the right of creditors to subject any excess or accumulation of income not needed for the support of the cestui que trust was not involved and was not decided, but as indicating its views upon that point the court said: "If in the course of time it may appear that there is an accumulation of the income over and above the sum needed for the support of Thomas, such excess would seem to be liable to creditors by reason of the fact that the whole income is given to him, and as to such excess the direction to the trustee to pay it to him quarterly would be absolute and unconditional."

Turning now to the will which is here under consideration, there is but one phrase in its language that might be considered as expressing an intent of the testatrix to impose restrictions on alienation of the beneficiary's interest, and that is found in the use of the words "for his use and benefit" in the provision that the gift and bequest shall not be delivered in person to the beneficiary but shall be placed in trust upon the terms and conditions thereinafter set forth, and held in trust "for his use and benefit;" but the very next sentence following the requirement that the legacy be placed and held in trust requires that one-tenth of the principal sum, and the income from the whole sum as it decreases from year to year, shall be delivered to the beneficiary annually.

The phrase, "for the use and benefit" of a named beneficiary, is not synonymous with the phrase, "for the support and maintenance" of such a beneficiary. Funds provided "for the support and maintenance" of an individual are limited to the necessities and comforts of life for such an individual in the station in which he is accustomed to live and move, while funds "for his use and benefit" may be applied to much broader purposes. As was said by the court in Huntington v. Jones et al., 72 Conn. 45, 43 A. 564, 566, "surely, if the income was used to pay house rent, or a grocer's, or a butcher's, or a coal man's bill due from William P., it would be applied 'for his use,' within the meaning of the words of the will. Why not, then, pay other of his debts? Very often to pay the debts of one would be to apply money 'for his use' in a higher degree and in a more serviceable form than in any other way." In the case at bar the assignment to the Port Gibson Oil Works recites as a consideration to Henry Vick Phelps, Jr., and Mary Helen Phelps, for the assignment of their interests, an agreement on the part of Harry Vick Phelps to pay from the cash received, as a result of said assignment, taxes amounting to $3,000 due on a plantation

located in Sharkey county, Miss., in which he owned a life interest, for the payment of which the said plantation was then about to be sold. From the amount of the taxes and the location of the plantation referred to, we may conclude that this plantation was valuable, and that to keep it from being sacrificed for taxes would be "for the use and benefit" of the owners in a high degree and serviceable form.

There is nothing on the face of the will under consideration here indicating a purpose on the part of the testatrix to impose a restraint on alienation of the legacy, and the trustees are not vested with any discretion in the premises, but the direction to the trustees to pay one-tenth of the principal and all the income at the end of each annual period is absolute and unconditional. We therefore have reached the conclusion that the trust estate created by item 45 of the will is subject to voluntary disposition or assignment by the beneficiary, and it follows as a necessary result that it may be by proper process subjected to his debts.

It cannot now be determined who will be the heirs-at-law of Harry Vick Phelps at his death, and, if he lives beyond a period of ten years, his heirs will have no interest in the trust property. Consequently we express no opinion as to the rights of such heirs, for the reason that it cannot now be determined that all of the class are before the court. The decree of the court below will be affirmed.

Affirmed.