ESTATE OF NATHAN P. CUTLER (JR.) DECEASED, NEWTON TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NEWTON TRUST COMPANY, TRANSFEREE AND TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3684, 3683.   Promulgated December 27, 1945.

---

\*　　\*　　\*　　\*　　\*　　\*　　\*

*Hugh J. Shaw, Esq.*, for the petitioners.
*Charles P. Reilly, Esq.*, for the respondent.

1308

## OPINION.

ARNOLD, *Judge*: The first issue is whether the value of the one-half interest in the trust created September 9, 1926, over which decedent exercised a power of appointment by will, to be included in the gross estate of decedent is $201,382.99, as determined by respondent, or a lesser amount, as contended by petitioner. Section 811 (f) of the Internal Revenue Code, as effective in 1940,[1] requires the inclusion in the gross estate of a decedent of the value at the time of his death of any property passing under a general power of appointment exercised by the decedent by will. One-half the value of the property in the trust created September 9, 1926, was, on September 10, 1940, $201,382.99. Petitioner contends that the decedent by will exercised two powers of appointment: First, the right to appoint the person to receive one-

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(f) PROPERTY PASSING UNDER GENERAL POWER OF APPOINTMENT.—To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, \* \* \*

half the income from the trust during the life of the decedent's brother, William; second, the right to appoint the persons to receive one-half the principal of the trust after the death of William. Petitioner valued these two rights at $195,778.35. Respondent does not question the method used in determining these values if the rights are to be separately valued, but contends that, as the decedent's power of appointment extended to the entire interest in the property, the amount to be included in the estate is the value of the property itself and not a lesser sum.

It is clear that the power of appointment given the decedent was a general power, that it was exercised, and that certain property passed under the power. In *Palfrey* v. *United States*, 36 Fed. Supp. 153, the District Court for the District of Massachusetts, in discussing the value of an interest to be included in an estate, said:

\* \* \* the net value of a trust, such as is here involved, must be the actual value of the securities composing the trust as of the decedent's death, less any restrictions which may go to depreciate that value.

The decedent in the instant case appointed all that he had the power to appoint. However, he did not have power to appoint the immediate transfer of half the principal of the 1926 trust. Under its terms that trust continued, and the disposition of the principal was postponed until the death of the surviving brother, William. The income during the continuance of the trust could be appointed, and the disposition of the principal at that future date could be appointed. The Newton Trust Co., as trustee of the trust created by the decedent in his will, did not immediately acquire the possession or use of the corpus, such right being postponed until termination of the 1926 trust. It received at decedent's death only the right to the income therefrom during the continuance of the 1926 trust. As a result of this restriction upon the transfer of the principal, the value of these two separate property rights passing under the exercise of the power of appointment is less than the present value of the corpus subject to the power.

Where the value of a life estate has been included as part of a decedent's gross estate it has been computed upon an actuarial basis. The correct method of computing the value of a remainder or reversionary interest was prescribed in *Estate of Leonard S. Waldman*, 46 B. T. A. 291, where the Board said:

We now come to the actuarial problem of computation of the value of the charitable devise as of the date of death of decedent. Petitioner contends that the value of the devise should be determined by first valuing the life estate and then subtracting that value from the value of the total residuum at the date of death, the remainder being the value of the devise to charity. Inasmuch as the problem here is to compute the value as of the date of decedent's death of the remainder to charity, we think it clear that the proper method, which was employed by respondent, is to compute the value of the charitable devise subject to the life estate. We have previously approved this treatment of the problem.

*William Nelson Cromwell et al., Executors*, 24 B. T. A. 461; cf. *Henry R. Ickel-heimer et al., Executors*, 14 B. T. A. 1317. * * *

In the instant case the value of the property passing under the power of appointment exercised by decedent in his will is the sum of the values of (1) the right to receive the income from $201,382.99 during the life of decedent's brother, and (2) the right to receive the principal amount upon the death of the brother. We agree with petitioner that these rights should be separately valued and we have found the values of these combined rights to be $195,778.35.

The second issue is whether certain charitable bequests made by decedent in his will are deductible, under section 812(d) of the Internal Revenue Code, from the gross estate. Decedent, by item third of his will, quoted above, bequeathed sufficient moneys to endow a bed in the Children's Hospital, Boston, Massachusetts, and a bed in the New England Peabody Home for Crippled Children, Newton, Massachusetts. These payments were to be made, after the death of the decedent's wife, from the principal of the trust created by the decedent's will. After certain other bequests, the remainder of the trust fund was to be paid to the Newton Trust Co. as trustee of a "Permanent Charity Fund" under a trust agreement dated April 2, 1932.

Respondent stipulated that the charities named in decedent's will are of the type of charitable organizations bequests to which are allowable as deductions under section 812(d) of the Internal Revenue Code, but contends that these bequests did not, at the date of decedent's death, have a presently ascertainable value, in that the extent to which the corpus of the trust would be diverted from the charities and applied for the use and benefit of Edith Talbot Cutler, under the power given the trustee to make payments from the principal for her use and benefit, could not be measured accurately. Respondent cites in support of this position *Merchants National Bank of Boston* v. *Commissioner*, 320 U. S. 256, reversing 45 B. T. A. 270, and *Estate of Charles H. Wiggin*, 3 T. C. 464.

Under Regulations 105, section 81.44, where a trust is created for both charitable and private purposes, the charitable bequest, to be deductible, must have at the decedent's death a value "presently ascertainable and hence severable from the interest in favor of the private use." In *Merchants National Bank of Boston, Executor, supra*, this provision was referred to as an appropriate implementation of the statute. In that case a part of the decedent's estate was left in trust, the income to go to the wife for life, the remainder to certain charities. The trustee was given authority to invade the corpus in its discretion for the comfort, support, maintenance, and/or happiness of the wife, and was enjoined to exercise this discretion with liberality and to consider her welfare prior to claims of residuary beneficiaries. The Su-

preme Court, in discussing the claim for a deduction under section 303 (a) (3) of the Revenue Act of 1926, which is similar to section 812 (d) of the Internal Revenue Code, said:

For a deduction under § 303 (a) (3) to be allowed, Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. Cf. *Humes* v. *United States*, 276 U. S. 487, 494. Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. * * *

The widow was 67 years of age, and in the 4 years and 7 months after the death of decedent she expended $48,682.04 out of an income of $87,362.66, including income from property of her own worth about $104,000. The Court concluded that under the language of the power the purposes for which the widow could and might wish to have the funds spent could not be reliably predicted, and that her possible use of the funds was not limited to any standard. Hence, it was held that the amount which might ultimately be received by the charities was not presently ascertainable and no deduction therefor was allowable.

Petitioner contends that under the rule of *Ithaca Trust Co.* v. *United States*, 279 U. S. 151 (1929), the possibility that the principal of the trust might be invaded for the support of the decedent's widow to the detriment of the residual bequest to charity is so remote as to be negligible.

In the *Ithaca Trust Co.* case the trustees were to pay the income to the widow for life and the remainder to charity, with authority to use from the principal any sum that might be necessary suitably to maintain the widow "in as much comfort as she now enjoys." The Supreme Court held the value of the remainder was ascertainable and therefore deductible, saying:

* * * The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs.

Petitioner introduced testimony tending to show that prior to 1940 decedent and his wife had lived on the income from the 1926 trust; that Edith Talbot Cutler, after 1940, had property, including her home, of the value of approximately $50,000; that she received income in excess of $10,000 per annum from the trust created by decedent; that she had income of about $1,000 per annum from her own property; that she lived upon the income from these sources and had no

need to resort to the use of her capital for living expenses; that her standard of living has not changed since her husband's death; and that since 1940 she has invested several thousand dollars of surplus income.

It is further argued by the petitioner that the trustee of the decedent's trust is not in a position to invade the principal of the 1926 trust for the support of the widow until after the death of the decedent's brother, William; and that, since William is only seven months older than the widow, the brother and the widow have substantially the same life expectancy and, therefore, there will be little, if any, opportunity for invasion of the principal of the 1926 trust.

The decisions in the cases dealing with the issue whether a power given trustees to invade the principal of a trust for the benefit of the life tenant renders a bequest of the remainder to charity indefinite depend generally upon two factors: (1) The language of the power, and (2) the likelihood of its exercise as disclosed by the facts. As in the *Ithaca Trust Co.* case, *supra*, where the language fixes a standard or limit of expenditure and the income of the beneficiary is substantially in excess of an amount sufficient to maintain that standard of expense, so that the likelihood of the exercise of the power is remote, the bequest is deemed ascertainable and is deductible. In the *Merchants National Bank Co.* case, *supra*, although the income was adequate to provide for the support of the widow according to her previous standard of living, the language of the power fixed no such standard or any other standard by which the possibility of invasion could be gauged.

In *Estate of Charles H. Wiggin*, *supra*, the trustees were authorized to use for the wife's benefit so much of the principal as in their judgment was necessary for her comfort and support. We held that, since there was no effort to limit the legal power of the trustee, even to the extent of confining it to the standard of living to which the decedent's wife had been accustomed, and since the expenditures on account of the wife after the decedent's death approximated, if they did not exceed, the free income from the estate, it would have been possible over a period of years to diminish or dissipate the corpus. Accordingly, we concluded that the amount of the bequest of the remainder to charities was not presently ascertainable and a deduction therefor was not allowable.

The deduction of charitable remainders has been allowed in a number of cases where, the income being sufficient, the language of the power was held not to render the bequest indefinite. In *First National Bank of Birmingham* v. *Snead*, 24 Fed. (2d) 186 (1928), the trustees were given authority, if in their opinion the income was not sufficient for the proper support and comfort of the beneficiary, to pay such additional sums out of the principal as they might deem necessary or de-

sirable for such purposes.  In *Hartford-Connecticut Trust Co.* v. *Eaton*, 36 Fed. (2d) 719 (1929), the trustee was authorized to pay for the benefit of the widow any part of the principal which it might deem necessary or advisable for her comfortable maintenance and support. The court concluded that this authorization must be deemed to refer to the amount necessary for her support according to her standard of living.  In *Lucas* v. *Mercantile Trust Co.*, 43 Fed. (2d) 39 (1930), affirming 13 B. T. A. 85, the will directed the trustee, if need be, to pay such part of the corpus as might be necessary for the comfort, maintenance, and support of the widow and specified that a written request by the widow should be authority to pay any sum requested. The court held that this did not give the widow an unlimited right to absorb the corpus and that the trustee was obliged to exercise some control.  In *Boston Safe Deposit & Trust Co. et al., Executors*, 21 B. T. A. 394, the widow was given authority to draw upon the principal if in the opinion of the trustee the net income was insufficient for her comfort and support.  In *Commissioner* v. *Robertson's Estate*, 141 Fed. (2d) 855 (1944), affirming B. T. A. memorandum opinion, the trustee was authorized to pay the beneficiary any part of the principal, if in his judgment the best interests of the beneficiary should so require.  In *Commissioner* v. *Wells Fargo Bank & Union Trust Co.*, 145 Fed. (2d) 130 (1944), affirming Tax Court memorandum opinion, the trustees were given authority to apply such part of the principal as they might think was reasonable to assist the beneficiary in case of need on account of sickness, accident, want, or other emergency.  In *Estate of Horace G. Wetherill*, 4 T. C. 678; 150 Fed. (2d) 1019; petition for review dismissed Sept. 4, 1945, the trustee was authorized to pay from the principal in the event the beneficiary became incapacitated or for any extraordinary expenses caused by an emergency created by her injury, illness, or disability, provided she stated to the trustee that she had insufficient funds to provide for such extraordinary expenses.

In the cases mentioned in the preceding paragraph the language of the power to use the principal fixed the purposes for which it might be used, or else prescribed, or was construed as prescribing, a standard or limit of expenditure.  In those cases the facts showed that the income was adequate to maintain the standard without resort to the principal.  On the other hand, even though a standard is prescribed, the bequest will be considered not presently ascertainable if the anticipated income does not afford a safe margin over the likely expenditure, as in *Boston Safe Deposit Co. et al., Executors*, 26 B. T. A. 486; affd., 66 Fed. (2d) 179.

We think payments authorized to be made from principal by the testamentary trustee "to or for the use and benefit of my said wife

as it may in its sole discretion, deem advisable" are not limited to the widow's comfort, maintenance, and support in her accustomed method of living. "Use and benefit" is a term of broader meaning than "comfort, maintenance, and support," and a power to "use" is a power to consume. *Merchants National Bank & Trust Co.* v. *Port Gibson Oil Works*, 141 So. 283; *Kennedy* v. *Pittsburg & L. E. R. Co.*, 65 Atl. 1102; *In re Stevens' Will*, 267 N. Y. S. 71; *Weston* v. *Second Orthodox Congregational Church*, 95 Atl. 146; *Stowell* v. *Stowell*, 8 Atl. 738. There is no stated limit to the permissible invasion save the discretion of the trustee, and no standard of expenditure is prescribed by which the possibility of invasion may be appraised. There is no standard of expenditure fixed in fact and capable of being stated in terms of money.

Petitioner contends that under Massachusetts law the discretionary power of the trustee may be exercised only as sound judgment may indicate in the light of all the attendant conditions, citing *Boston Safe Deposit & Trust Co. et al., Executors, supra.* However, the point was considered and rejected in the *Merchants National Bank Co.* case, *supra.* See also *Industrial Trust Co.* v. *Commissioner,* 151 Fed. (2d) 592.

The fact that the principal of the trust created in 1926 could not be reached and appropriated to the use of the widow during the further term of that trust, which would continue until the death of decedent's brother, does not require a different conclusion. If the decedent's brother should die before the widow, the 1926 trust would terminate, half the principal thereof would pass to the trustee of the trust created by decedent's will, and the trustee could then make use of it under the power to invade. Whether the brother or the widow will die first is purely speculative and is not a matter upon which an actuarial calculation for tax purposes can be made. Cf. *Humes* v. *United States,* 276 U. S. 487 (1928). Nevertheless, the possibility that the widow will be the survivor makes it impossible to determine that the principal will not be invaded. Furthermore, under the broad discretionary powers given the testamentary trustee, among which is the right to mortgage or sell, the trustee could, in its discretion, anticipate the use of trust property in the 1926 trust which, upon termination of that trust, would vest in the testamentary trustee, and secure money for the present use and benefit of the widow by mortgage or pledge or by present sale of the right to receive trust property upon termination of the 1926 trust and thus indirectly invade principal prior to the termination of the 1926 trust. The 1926 trust indenture does not prohibit such anticipation of principal or income. No objection could be made by other beneficiaries to any invasion, direct or indirect, for the use and benefit of the widow, as all decisions made by the trustee in good faith are conclusive on all parties in interest.

The testamentary trustee is empowered to purchase from insurance companies annuities for Bertha Farnum and Marion U. Chapman in lieu of the annuities payable out of income. Whether the trustee in its discretion will purchase annuities, or when it might exercise such discretion, or the cost of such annuities, can not be predicted as of the time of decedent's death. These circumstances but add to the uncertainty of appraising the amount ultimately going to charity.

The Newton Trust Co. in this matter is acting in three capacities: (1) As executor of the estate of the decedent, (2) as trustee of the trust created by decedent in his will, and (3) as trustee of the trust created by decedent's father in 1926. However, notwithstanding the fact that the fiduciary is identical, the estate and the two trusts are three distinct persons. In Docket No. 3683 respondent seeks to hold the Newton Trust Co., as trustee of the 1926 trust, liable as a trustee and transferee, for the estate tax due from decedent's estate. Respondent's argument is that the trustee of decedent's trust is a transferee, within the definition in section 900 (e) of the Internal Revenue Code,[2] and that the trustee of the 1926 trust holds half the principal of that trust as a fiduciary of such transferee and, therefore, is liable under section 901 (b) of the code[3] for the payment of the tax to the extent of the assets so held. Petitioner contends that it received no property from the estate and denies that it is liable under these provisions of law.

Transferee liability, in general, is based upon the trust fund doctrine, or similar theory, that one who receives property in liquidation or by gift, devise, or inheritance may be called upon to pay taxes due the United States from the donor or estate or other person which, except for the transfer, might have been collected from the property transferred. The administrative procedure for collection by assessment and distraint is also provided for enforcing the liability under section 3467 of the Revised Statutes[4] of a fiduciary who pays debts of the person for whom he acts without paying debts due the United States from such person. Section 901 (b) permits the Commissioner

---

[2] SEC. 900. TRANSFERRED ASSETS.

\* \* \* \* \* \* \*

(e) DEFINITION OF "TRANSFEREE".—As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee.

[3] SEC. 901. NOTICE OF FIDUCIARY RELATIONSHIP.

\* \* \* \* \* \* \*

(b) FIDUCIARY OR TRANSFEREE.—Upon notice to the Commissioner that any person is acting in a fiduciary capacity for a person subject to the liability specified in section 900, the fiduciary shall assume on behalf of such person the powers, rights, duties, and privileges of such person under such section (except that the liability shall be collected from the estate of such person), until notice is given that the fiduciary capacity has terminated.

[4] R. S. Sec. 3467 (U. S. C., Title 31, § 192)—

"Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

to enforce collection of the estate tax against a transferee by reaching assets held by a fiduciary for the benefit of the transferee.

The trustee of the trust created by decedent in his will is a transferee of property of the decedent within the definition of section 900 (e). The trustee of the 1926 trust has received no assets from the estate and is not subject to liability as a transferee. However, since the trustee of the 1926 trust is under the obligation to pay over to the trustee of the decedent's trust half the income from the trust corpus it holds, and ultimately half the principal of the 1926 trust, it is acting in a fiduciary capacity for the trustee of the decedent's trust. Cf. *Fletcher Trust Co., Trustee*, 141 Fed. (2d) 36, affirming 1 T. C. 798; *Fidelity-Philadelphia Trust Co.*, 3 T. C. 670; affirmed per curiam, C. C. A., 3d Cir., Feb. 14, 1945; *Edna F. Hays et al., Executors*, 34 B. T. A. 808; *Eleanor Lansburgh, Administratrix*, 35 B. T. A. 928. The trustee of the 1926 trust is therefore required by section 901 (b) to assume the duty imposed upon the trustee of decedent's trust as a transferee to pay the additional tax due, to the extent of the assets of the transferee held. The petitioner did not argue this point on brief and apparently does not seriously contend that it is not liable under section 901 (b) if a deficiency is determined.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

TURNER, *J.*, concurs only in the result.

---

OPPER, *J.*, dissenting: If the decedent had appointed life estate and remainder to the same person, there is a serious question whether the estates would not merge, giving the appointee the entire estate in the trust property. See 1 Restatement of the Law of Trusts, § 127, pp. 322, 323; *Berlenbach* v. *Chemical Bank & Trust Co.*, 260 N. Y. 539; 184 N. E. 83. In that event it would seem difficult to suggest that anything less than the full value of the trust corpus was subject to estate tax.

Whether or not that occurred, life estate and remainder are but the two parts of a whole. The latter may be measured by deducting from the full value of the property that of intervening life estates. Thus, in *Security-First National Bank of Los Angeles, Executor*, 35 B. T. A. 815, we stated at page 822:

* * * The value of the remainder interest should be computed by determining the present worth of the entire trust estate, giving effect to the life tenancy * * *

Where life estate and remainder are both subject to a decedent's disposition, the process of subtraction is unnecessary, and it would seem to follow that nothing but the value of the whole can adequately account for its two components.

MURDOCK and HARRON, *JJ.*, agree with this dissent.