**HAYS' ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 12973.

United States Court of Appeals
Fifth Circuit.

April 14, 1950.

Ernest Kellner, Greenville, Miss., for petitioner.

Lee A. Jackson, Sp. Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, Charles E. Lowery, Sp. Atty. Bureau of Internal Revenue, Helen Goodner, Sp. Asst. to Atty. Gen., Carlton Fox, Sp. Asst. to Atty. Gen., all of Washington, D.C., for respondent.

Before HOLMES, McCORD, and BORAH, Circuit Judges.

170

HOLMES, Circuit Judge.

This petition for review involves a deficiency assessment of estates taxes against petitioner. The deficiency resulted solely from the inclusion by the Commissioner in the decedent's gross estate of the value of farm land in Mississippi, which was transferred by decedent to herself as trustee for the benefit of her four children and the heirs at law of any of said children who died during the continuance of the trust. The Tax Court sustained the Commissioner's determination, because it held (1) that the trust instrument required the mortgage debt on the land to be paid by the trustee out of income from the trust estate; (2) that the trustee was given the right to withhold trust income from the beneficiaries; and (3) that the trustee was given the power to terminate the trust. The pertinent undisputed facts are as follows:

In consideration of one dollar and of love and affection, the decedent conveyed said land to herself as trustee. The conveyance was subject to certain mortgage liens that secured debts aggregating $36,636.16. The trust was irrevocable, and the powers of the trustee were to hold, manage, sell, reinvest, and otherwise handle, the land as in her discretion was for the best interest of the beneficiaries. The grantor filed a gift-tax return for the year 1941, which valued the land at $107,636.16 less the amount of the mortgage debts, which equalled a net sum of $70,660.80, paying the gift taxes thereon of $1033.62. There was no accumulated or undistributed income from the trust at the date of her death. Sections 1 and 2 of Item III of the trust instrument are as follows:

"Section 1. The Trustee shall pay the net income of the trust estate or so much thereof as she deems to the best interest of the beneficiaries and to the best interest of the trust, monthly or quarterly, or as often as she deems best, to said benficiaries in equal shares, and the net income not distributed shall remain in and become a part of the trust estate, however, the trustee shall not be required to make any distribution of the net income of the trust estate to the beneficiaries at any time unless and until, in her discretion, the trustee deems such distribution to the best interest of the beneficiaries and of the trust estate.

"Section 2. This trust shall continue until the death of the grantor unless prior thereto the trustee shall deem it to the best interest of the beneficiaries and of the trust estate so to do, and in such event, the trustee may terminate this trust at any time.

"Upon the termination of the trust, either by the death of the grantor or by the trustee prior thereto, the trust estate shall be immediately distributed in kind to the beneficiaries, in equal shares.

"In the event of the death of any one of the beneficiaries during the continuance of this trust, the interest of such beneficiary shall pass to his or her heirs at law under the laws of descent and distribution of the State of Mississippi.

"The beneficiaries of this trust shall have no interest in the trust estate and the income therefrom, except to receive the same as herein provided, and said beneficiaries shall be without power to assign, pledge, encumber or sell their interest in the trust estate and the income therefrom, and the interest in the trust estate and the income therefrom shall never become liable for their debts."

Petitioner concedes that, if the payment of the mortgage notes against the trust property constituted the discharge of a legal obligation of the decedent, the direction that the same be paid by the trust was a reservation by the decedent of the trust income; but she denies that the payment constituted such discharge of a legal obligation, and contends that it did not result in a pecuniary benefit to the decedent, because the land was transferred subject to encumbrances and the trustee was charged with the duty of paying the mortgage notes out of trust income. The Tax Court held that there was nothing in the trust agreement or elsewhere in the evidence to indicate that the grantor intended for the trustee to assume the primary obligation of the mortgage notes. We agree with the petitioner that this ruling was erroneous as a matter of law. The trust instrument expressly provided that the

trustee was therein authorized and directed to pay the indebtedness secured by the liens out of the income that might be derived from said lands or in such manner as she deemed to the best interest of the beneficiaries. The record shows that the trustee accepted the trust and acted thereunder throughout the year 1942, and down to the date of her death on November 2, 1943. It is elementary that the grantee in an instrument who accepts such a trust is bound by its obligations, and that the form of the assumption is immaterial provided it casts upon the grantee the burden to pay the indebtedness. The Tax Court conceded that this was the rule in Mississippi.

■ The indebtedness secured by liens on the land conveyed by decedent to the trust, although originally incurred by her, constituted no charge upon her capital assets after the conveyance. Thereafter, the decedent's liability for said indebtedness was contingent, not only upon the failure of the trust to pay the same, but upon the existence of a deficiency after a foreclosure sale of the land and the application of the proceeds of the sale to the payment of the indebtedness. The possibility of decedent's liability for said debts was so remote that her direction that the trust pay the same did not constitute a reservation of income by her from the land conveyed in trust. Such possibility of liability was too remote to come within the meaning of the statute. 26 U.S.C.A. § 811(d) (1); Dort v. Helvering, 63 App.D.C. 98, 69 F.2d 836; Mellon v. Driscoll, 3 Cir., 117 F.2d 477; Commissioner v. Hofheimer's Estate, 2 Cir., 149 F. 2d 733.

Although the payments made on the mortgage notes benefited the trust, the Tax Court held that they were also for the benefit of the grantor. It said: "The grantor would have been benefited by having her debt paid and the trust by having its property cleared of incumbrances." A part of this statement was based on the assumption that decedent remained primarily liable on the mortgage notes, which was not correct. The grantor conveyed the lands to the trust subject to the mortgage, but she also directed that the trustee pay the mortgage debts. The trustee accepted the trust and thereby became primarily liable for said debts; the mortgagor became a surety with all the consequences flowing from the relation of suretyship. Gilliam v. McLemore, 141 Miss. 253, 106 So. 99, 43 A.L.R. 79.

It is not a general or indefinite benefit but a pecuniary benefit that is necessary for a transaction to constitute a reservation of income, and in this case no pecuniary benefit resulted to the decedent by the trustee's payment of the mortgage notes. A pecuniary benefit means an increase in one's net worth by the receipt of money or property. The payment of the mortgage notes did not and could not increase the decedent's net worth; she received no money; she received no property; none of her property was thereby enhanced in value or released from liens or encumbrances. The payment of the mortgage debts resulted in pecuniary benefit to the trust alone, in that the net worth of its land was increased to the extent of the payments made. There was no legal obligation upon the decedent to discharge this debt except in case of a deficiency being due after there had been a sale of the land upon foreclosure of the mortgage. U. S. v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131; Edgewater Park Co. v. Standard Bond, etc., Co., 162 Miss. 684, 138 So. 811; McLeod v. Building & Loan Ass'n, 168 Miss. 457, 151 So. 151, 37 Am. Jur. 321.

■ The second ground on which the Tax Court predicated its decision was that the trustor reserved the right to withhold trust income from the beneficiaries, which resulted in the power to designate who should enjoy the income from the trust estate. Under the trust agreement, income not distributed was to "remain in and become a part of the corpus of the trust"; and upon termination of the trust, either by death of the trustee or prior thereto by act of the trustee, it was provided that the trust estate should be immediately distributed in kind to the beneficiaries. This distribution was to be in equal shares to those who would have received it in equal shares if it had been distributed as income. No arbitrary power to accumulate income

was vested in the trustee. Such power was discretionary, and was governed by determinable standards, namely, the best interest of the beneficiaries and of the trust. It is a usual provision in spendthrift trusts. The trustee was bound to act in conformity with the purposes of the trust. Her discretion was subject to control by a court of equity. It was said in Stix v. Commissioner, 2 Cir., 152 F.2d 562, at page 463, that "no language, however strong, will entirely remove any power held in trust from the reach of a court of equity"; but we do not need to go that far here, since the trustee's discretion was governed by determinable standards, and was never abused or even exercised. See, also, Cushman v. Commissioner, 2 Cir., 153 F.2d 510, 514; Commissioner v. Irving Trust Co., 2 Cir., 147 F.2d 946, 949; Greenwich Trust Co. v. Converse, 100 Comm. 15, 26, 122 A. 916; Hooker v. Goodwin, 91 Conn. 463, 99 A. 1059, Ann.Cas.1918D, 1159; Little v. Geer, 69 Conn. 411, 37 A. 1056.

The third ground upon which the Tax Court placed its decision was that the power of the trustee to terminate the trust, prior to her death, was one by the exercise of which the enjoyment of trust property was subject to change. Therefore, it regarded the decision of Commissioner v. Holmes Estate, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228, as determinative of this issue; and it thought that a substantially similar situation was presented in Commissioner v. Newbold's Estate, 2 Cir., 158 F. 2d 694, 697, wherein the court said: "The exercise of the power to terminate would, depending on the time when it was exercised, determine the beneficiaries among whom the income would be divided; and similarly as to the corpus of the trust estate." Whether or not this is true in the instant case depends upon the character of the equitable interest that the children took under the trust instrument. They were the only beneficiaries specifically named by the donor, and their best interest was evidently the primary object of her bounty. They were granted an equity in estates of freehold, but were they estates of inheritance or estates not of inheritance? The answer to this question depends upon the intention

of the donor, which must be gathered from the trust instrument if free from ambiguity. All such grants are taken most strongly against the grantor. By it, she took the legal title as trustee and stripped herself as an individual of every vestige of beneficial interest in the land and of every power over it. The two unexercised powers here involved were granted to her as trustee, and were subject to the control of a court of equity.

There is no presumption that the transfer was made in contemplation of death, and there was no finding to that effect. The gift tax was assessed and paid on the full fee simple net value of the property, not on a life interest; and the contemporaneous construction of all parties during the continuance of the trust, including the Government, was that the trustor had given away her entire beneficial interest in the property. What then became of the equitable title to the fee? The grantor parted with it but did not give it to the trustee. There was no place for it to vest except in the beneficiaries, and the law favors the vesting of estates. True, the instrument provided that the beneficiaries should have no interest in the trust estate except as therein stated; but it also provided that, upon the death of a beneficiary during the continuance of the trust, the *interest of such beneficiary* should pass to his or her heirs at law. This was purely an equitable interest in a freehold estate; it was an estate of inheritance of land, the corresponding legal title to which was in the trustee. An owner in fee simple is one who has lands, tenements, or hereditaments, to hold to one's self and one's heirs forever, generally, absolutely, and simply, "without mentioning what heirs, but referring that to his own pleasure or the disposition of the law." This is property in the highest degree, and the owner is said to be seized thereof absolutely in his own right, since it belongs to him and his heirs forever. The word fee now is generally used to express the continuance or quantity of estate; fee-simple is used in contradistinction to a fee conditional at common law or a fee-tail by statute. The words fee simple import an absolute inheritance that

is descendible to heirs general, whether male or female, lineal or collateral. Lewis' Blackstone, Book II, Ch. VII.

 At common law, the word "heirs" was necessary in a grant or donation in order to make a fee of inheritance, but if land was conveyed to a man forever, or to him and his assigns forever, this vested in him only an estate for life. In Mississippi, words of inheritance are not necessary in a conveyance of land, but every estate in land granted, conveyed, or devised, is deemed a fee simple if a less estate be not clearly intended to be passed.[1] In the instant case, the equitable interest of the beneficiaries was not limited to a life estate, but was expressly granted to their heirs in event of death during continuance of the trust.[2] No one is heir to the living;[3] and since death for all is inevitable, a conveyance to a man and in event of his death to his heirs is in legal effect the same as a conveyance to him and his heirs. See Harring v. Flowers, 91 Miss. 242, 45 So. 571, by the Supreme Court of Mississippi, wherein, under a will bequeathing all of testator's property to his "sister, at her death her heirs are to have it," the sister took a fee simple title on the death of the testator. Cf. George v. Adams, 141 Miss. 144, 106 So. 359; Nations v. Colonial & U. S. Mortgage Co., 115 Miss. 741, 76 So. 642; Merchants' Nat. Bank & Trust Co. v. Port Gibson Oil Works, 165 Miss. 314, 141 So. 283.

The exercise of the power of the decedent to terminate the trust could not have created or terminated any right of enjoyment of trust property or changed the person or persons who were entitled to enjoy it. During the continuance of the trust, the absolute fee to the land was in the trustee and the four named beneficiaries, the former holding the legal title and the two powers above mentioned; the latter holding the equitable title; both trustee and beneficiaries being subject to the spendthrift provisions of the trust instrument and the jurisdiction of a court of equity. It was not a conditional fee, because there was no express or implied provision that if any beneficiary had no heirs the gift should revert to the trustor or descend to someone else; the estates granted were not for life, not in fee tail or special tail; and neither the Rule in Shelley's case nor the Mississippi statue, Code 1942, § 835, abolishing the same is applicable.[4] What is applicable is the local statutory provision that words of inheritance in a deed are not necessary and that every conveyance of land shall be deemed a fee simple if a less estate be not limited by express words or unless it clearly appears from the conveyance that a less estate was intended to be passed thereby.[5] A Mississippi statute also provides that any interest in land may be conveyed in writing, to vest immediately or in the future, and such writing shall have the effect to transfer the title according to its terms.[6]

Since a man is said to carry his heirs within himself while he lives, the power to terminate this trust was not a power of disposition between contingent beneficiaries, because it made no difference when the original beneficiaries died or when the trust was terminated, their equitable interest in the land during the existence of the trust was an incorporeal hereditament in a freehold estate of inheritance, the possession and legal title of which was in the trustee. The conveyance was to each beneficiary and to his or her heirs at law whether he or she lived or died during the continuance of the trust. If any beneficiary had died during the existence of the trust, the heir or heirs would have taken by op-

---

1. Sec. 833, Miss.Code of 1942.

2. The same quantity of estate would have passed under the state statute without any words of inheritance. Both at common law and by statute a conveyance to a man and his heirs conveys a fee simple estate. Sec. 833, Miss.Code of 1942.

3. Nemo est haeres viventis. Broom's Legal Maxims, 4th Ed., p. 333.

4. Dibrell v. Carlisle & Humphries, 51 Miss. 785; Liberty Bank v. Wilson, 116 Miss. 377, 77 So. 145; Boone v. Davis, 64 Miss. 133, 8 So. 202.

5. Sec. 833, Code of 1942.

6. Sec. 831, Code of 1942. Cf. Blair v. C. I. R., 300 U.S. 5, 57 S.Ct. 330, 81 L. Ed. 465.

eration of law and not by purchase, because the mandate of the law is more potent than the grant of an individual.

The decision under review should be reversed, and judgment rendered here for petitioner.

Reversed and rendered.